## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

State Farm Fire and Casualty
Company,

              Plaintiff,

  vs.

Daniel M. Homolka, P.A.; Daniel M.
Homolka; Watts Guerra, LLP; Mikal C.
Watts; and Lowell Lundstrom, Jr.,

              Defendants.

Case No. _____

**DEMAND FOR JURY TRIAL**

**COMPLAINT IN DECLARATORY
JUDGMENT**

State Farm Fire and Casualty Company (hereinafter "State Farm"), for its

Complaint against Daniel M. Homolka, P.A., Daniel M. Homolka; Watts Guerra,

LLP; Mikal C. Watts; and Lowell Lundstrom Jr., states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.    This action is brought under Rule 57 of the Federal Rules of Civil

Procedure and 28 U.S.C. § 2201 *et seq*.

2.    State Farm is an insurance company that is incorporated and

maintains its principal place of business in the State of Illinois.  At all material times,

State Farm was licensed to transact business and issue insurance in Minnesota.

3.    Defendant Daniel M. Homolka, P.A. is a professional firm incorporated

in the State of Minnesota with its principal place of business in Saint Paul,

Minnesota.  Upon information and belief formed after an inquiry reasonable under

the circumstances, its owner is also a resident and citizen of the State of Minnesota. Defendant Daniel M. Homolka, P.A. is an interested party to the extent it is or may claim to be an insured under one or more of the insurance policies at issue for claims asserted against it in the Underlying Complaint.

4.     Defendant Daniel M. Homolka is a resident and citizen of Minnesota. Defendant Homolka is an interested party to the extent he is or may claim to be an insured under one or more of the insurance policies at issue for the claims asserted against him in the Underlying Complaint.

5.     Defendant Watts Guerra, LLP is a Texas limited liability partnership with its headquarters in the State of Texas.  Upon information and belief formed after an inquiry reasonable under the circumstances, none of its partners are citizens of the State of Minnesota.  It is an interested party to the extent it is a party to the Underlying Litigation.

6.     Defendant Mikal C. Watts is a resident and citizen of the State of Texas.  Defendant Mikal C. Watts is an interested party to the extent he is a party to the Underlying Litigation.

7.     Defendant Lowell Lundstrom Jr. is a resident and citizen of the State of South Dakota.  He is an interested party to the extent he is the plaintiff in the Underlying Litigation.

8.     Jurisdiction is properly conferred with respect to the allegations herein under 28 U.S.C. § 2201 and § 1332 *et seq.*  This action involves citizens and

entities of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     Venue is proper in this District under 28 U.S.C. § 1391 because the insurance policies at issue were written and issued in Minnesota.  Defendants Daniel M. Homolka, P.A. and Daniel M. Homolka are citizens and residents of Minnesota.  Defendants Watts Guerra, LLP; Mikal C. Watts; and Lowell Lundstrom, Jr. engaged in business with Defendants Daniel M. Homolka, P.A. and Daniel M. Homolka in the State of Minnesota.

## FACTUAL BACKGROUND

10.     On or about February 20, 2019, Defendant Lowell Lundstrom, Jr. initiated a lawsuit against Defendants Daniel M. Homolka, P.A.; Daniel M. Homolka; Watts Guerra, LLP; and Mikal C. Watts in the Roberts County Circuit Court, Fifth Judicial District, South Dakota.  A true and correct copy of the Complaint (the "Underlying Complaint") is attached hereto and marked as **Exhibit A**.  The case was subsequently removed by Mikal C. Watts and Watts Guerra, LLP to the United States District Court for the District of South Dakota.

11.     Among other things, the Underlying Complaint alleged:

    a.  In 2014, Defendants Daniel M. Homolka, P.A.; Daniel M. Homolka; Watts Guerra, LLP; and Mikal C. Watts (the "Lawyers") engaged Defendant Lowell M. Lundstrom to prepare a marketing and advertising plan for lawsuits they were handling involving Syngenta AG, a global agricultural business (the "Syngenta Lawsuits").

b.  Defendant Lundstrom indicated that he wanted to be paid $10,000 per month to lease his domain name LostCornIncome.com and to build the Lawyers a website.  Defendant Lundstrom agreed to place all media buys with funding provided by the Lawyers, operationalize the strategic acquisition plan, create advertising collateral, and manage the infield operations for the local town hall meetings for a lump sum bonus if the Lawyers were able to get 6 million acres on behalf of the Syngenta Lawsuits (approximately 7,500 farmers).

c.  Defendant Lundstrom told Defendant Homolka that he wanted to pay off his family farm and any equipment loans (approximately $1.7 million) using the lump sum bonus he would receive if he met the targets in the Syngenta Lawsuits.

d.  Defendant Homolka and Defendant Lundstrom agreed that the Lawyers would pay Defendant Lundstrom a $3.4 million bonus if they were able to get an additional 6 million acres of farmland in the Syngenta Lawsuits, which would allow Defendant Lundstrom to net at least $1.7 million.

e.  Defendant Lundstrom alleges that the Lawyers would not reduce this agreement to writing because they were afraid it would run afoul of Rule 5.4 of the Rules of Professional Conduct.

f.   Defendant Lundstrom alleges he developed the website LostCornIncome.com, created a 30-minute informercial, arranged a toll-free phone number for prospective clients, managed media buys and placement of advertising for the Lawyers, and assisted in arranging over 2,000 town hall meetings.

g.   Defendant Lundstrom alleges he dropped other marketing clients because of the amount of work he was performing for the Lawyers.

h.   The Lawyers, through Watts Guerra, LLP, paid Defendant Lundstrom the $10,000 monthly lease for the domain name until 2016.

i.   By early 2016, Defendants Daniel M. Homolka and Daniel M. Homolka, P.A. advised Defendant Lundstrom that they would be dispersing the Syngenta Lawsuits payments moving forward. They paid only sporadically and fell behind.

j.   Defendant Lundstrom alleges the Lawyers told him to purchase a new truck to facilitate the travel he did for the Syngenta Lawsuits, and that they would reimburse him up to $50,000 for the truck.  He alleges they failed to reimburse him for the truck.

k.   A settlement was reached in the Syngenta Lawsuits in 2018.

l.   Defendant Lundstrom alleges he exceeded the 6 million acre target set by the Lawyers and that he asked them to compensate him the $3.4 million bonus, repay the past-due lease payments,

and reimburse him for the purchase price of his truck. The Lawyers rejected his request.

12. The Underlying Complaint asserts the following causes of action against the Lawyers:

    a. Count I: Breach of Contract for failing to compensate Defendant Lundstrom for his services and breach of the Lawyers' duty of good faith and fair dealing.

    b. Defendant Lundstrom alleges he suffered direct damages through his loss of contractually-agreed-to compensation and other lost profits which the Lawyers knew of or should have reasonably foreseen.

    c. Count II: Fraudulent Misrepresentation for promising a bonus that the Lawyers never intended to pay.

    d. Defendant Lundstrom alleges the Lawyers' fraudulent misrepresentations were willful, wanton, malicious, reckless, and oppressive, justifying an award of punitive damages.

    e. Count III: Unjust Enrichment for revenue and profits gained and taken by virtue of Defendant Lundstrom's efforts to gather additional clients for the Lawyers in the Syngenta Lawsuits.

    f. Defendant Lundstrom alleges that the Lawyers' retention of revenue and profits from the services he provided unjustly enriches the Lawyers and should be disgorged.

g. Count IV: Civil Conspiracy for the Lawyers' conspiracy to commit and facilitate the wrongful conduct described in the Underlying Complaint.

h. Defendant Lundstrom alleges he is entitled to recover compensatory and consequential damages as well as exemplary or punitive damages.

i. Defendant Lundstrom seeks a judgment against the Lawyers for compensatory and general damages, special damages, punitive damages, costs and disbursements, and interest.

13.   Upon information and belief, Defendants Daniel M. Homolka and Daniel M. Homolka, P.A. tendered a claim related to the Underlying Lawsuit to their professional malpractice insurer.   Upon information and belief, that insurer appointed counsel to defend Defendants Daniel M. Homolka and Daniel M. Homolka, P.A.   Said counsel filed a Notice of Appearance in the Underlying Lawsuit in the United States District Court for the District of South Dakota on April 25, 2019.

14.   On or about August 10, 2020, Defendant Daniel M. Homolka reported the Underlying Lawsuit to State Farm and sought defense and indemnity under any potentially applicable policies.

### THE BUSINESS-OFFICE POLICY

15.   At all relevant times from February 1, 2014, through February 1, 2019, Defendants Daniel M. Homolka, P.A. and Daniel M. Homolka were insured under

a Business-Office Policy, Coverage Form CMP-4100.  A true and correct copy of the Business-Office Policy is attached hereto as **Exhibit B**.  Per the insuring agreement, the Business-Office Policy only provides coverage pursuant to its provisions, exclusions, conditions, or limitations.

16.    The Business-Office Policy provides in **SECTION II – LIABILITY, Coverage L – Business Liability** for all applicable policy periods:

1.  When a Limit Of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" with or without the insured's consent, for any reason and at any time. But:

    a.  The amount we will pay for damages is limited as described in **SECTION II — LIMITS OF INSURANCE**; and

    b.  Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgments or settlements or medical expenses.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II – Supplementary Payments**.

2.  This insurance applies:

    a.  To "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

8

> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph **1.a.** of **SECTION II — WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

***

17.    Endorsement **CMP-4721 EXCLUSION – PERSONAL AND ADVERTISING INJURY**, for all applicable policy periods, provides that:

> The insurance provided under **SECTION II – LIABILITY** does not apply to "personal and advertising injury".

18.    The Business-Office Policy provides, in pertinent part, in **Section II – Exclusions** as amended by **CMP-4223.1 Amendatory Endorsement (Minnesota)**, for the policy period February 1, 2019, through February 1, 2020, and **CMP-4223 Amendatory Endorsement (Minnesota)** for policy periods February 1, 2015, through February 1, 2019:

> Applicable to **Coverage L – Business Liability**, this insurance does not apply to:
>
> 1. **Expected Or Intended Injury**
>
>    a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

    b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.

    This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**2. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    a. That the insured would have in the absence of the contract or agreement; or

    b. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

*** 

19.    The Business-Office Policy, as amended by **CMP-4223.1 Amendatory Endorsement (Minnesota)** for the policy period February 1, 2019, through February 1, 2020, and **CMP-4223 Amendatory Endorsement (Minnesota)** for policy periods February 1, 2015, through February 1, 2019, provides in **SECTION II – GENERAL CONDITIONS**, Paragraph **3. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

*** 

    b.    If a claim is made or "suit" is brought against any insured, you must:

        (1)    Immediately record the specifics of the claim or "suit" and the date received; and
        (2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\*\*\*

20.    **SECTION II – DEFINITIONS** of the Business-Office Policy CMP-4100

defines certain terms:

\*\*\*

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury caused by the "bodily injury".

\*\*\*

17.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

18.  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.    False arrest, detention or imprisonment;
b.    Malicious prosecution;
c.    The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;
f.    The use of another's advertising idea in your "advertisement"; or

g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*** 

21.   "Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. . . .

*** 

22.   **SECTION II – DEFINITIONS** of the Business-Office Policy, as amended by **CMP-4561.1 POLICY ENDORSEMENT**, for the policy period February 1, 2019, to February 1, 2020, defines "personal and advertising injury":

18.   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;
b.   Malicious prosecution;
c.   The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.   The use of another's advertising idea in your "advertisement";

g.   Infringing upon another's trade dress or slogan in your "advertisement"; or

h.   Infringement of another's copyright, patent, trademark, or trade secret.

23.    The allegations in the Underlying Complaint do not trigger the insuring agreement because none of them constitute "bodily injury" or "property damage" caused by an "occurrence."  The policy does not afford coverage for "personal and advertising injury."  State Farm thus owes Daniel M. Homolka, P.A. and Daniel M. Homolka no coverage obligations under the Business-Office Policy.

24.    Even if the allegations in the Underlying Complaint had triggered the insuring agreement, coverage would be barred by Exclusions within the policy, as further outlined above.

25.    There is no coverage under the Business-Office policy for exemplary or punitive damages, as such coverage is generally prohibited by law as a matter of public policy.

26.    Daniel M. Homolka, P.A. and Daniel M. Homolka failed to comply with the Conditions of the policy which required them to provide prompt notice of suit to State Farm.

27.    By letter dated September 18, 2020, State Farm advised Daniel M. Homolka and Daniel M. Homolka, P.A. that it would not extend coverage for defense or indemnity for the claims asserted against them in the Underlying Lawsuit.

28.     State Farm reserves the right to rely upon and amend this Complaint in Declaratory Judgment, if necessary, to include other or additional policy provisions, exclusions, conditions, or limitations not previously mentioned, that are or may become applicable to the allegations asserted against Daniel M. Homolka, P.A. and/or Daniel M. Homolka.

## THE CONDO POLICY

29.     At all relevant times from May 4, 2016 through May 4, 2020, Defendant Daniel M. Homolka was insured under a Condominium Unitowners Policy ("Condo Policy").  A true and correct copy of the Condo Policy is attached hereto as **Exhibit C**.  Per the insuring agreement, the Condo Policy only provides coverage pursuant to its provisions, exclusions, conditions, or limitations.

30.     Policy Form **FP 7956**, as amended by **FE-3477 CONDOMINIMUM UNITOWNERS POLICY ENDORSEMENT (Minnesota)**, which was in effect for policy periods May 4, 2016 – May 4, 2017 and May 4, 2017 – May 4, 2018 defines certain relevant terms within **DEFINITIONS**, including:

***

2.  "**bodily injury**" means physical injury, sickness, or disease to a person.  This includes required care, loss of services and death resulting therefrom. . . .

***

3.  "**business**" means a trade, profession or occupation.  This includes farming.

***

6.   "**insured**" means you and, if residents of your household:

    a.     your relatives; and
    b.     any other person under the age of 21 who is in the care of a person described above.

"You" means the "named insured"; Daniel M. Homolka and Rebecca Lokken are the "named insureds" on the Condo Policy.

***

9. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

    a.    **bodily injury**; or
    b.    **property damage**

during the policy period.  All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

10. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property.  Theft or conversion of property by any **insured** is not **property damage**.

31.    Policy Form **FP 7956**, which was in effect for policy periods May 4, 2016 – May 4, 2017 and May 4, 2017 – May 4, 2018 provides in **SECTION II – LIABILITY COVERAGES**:

> **COVERAGE L – PERSONAL LIABILITY**
> If a claim is made or suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1.    Pay up to our limit of liability for the damages for which the **insured** is legally liable; and
> 2.    Provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals **our** limit of liability.

32.     Policy Form **FP 7956**, which was in effect for policy periods May 4,

2016 – May 4, 2017 and May 4, 2017 – May 4, 2018 provides in **SECTION II –**

**EXCLUSIONS**:

> 1. Coverage L and Coverage M do not apply to:
>    a.   **Bodily injury** or **property damage**:
>        (1)   Which is either expected or intended by the **insured**; or
>        (2)   Which is the result of willful and malicious acts of the **insured**;
>
>    b.   **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any insured. . . .
>
> ***
>
> 2. Coverage L does not apply to:
>    a.   liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**.  This exclusion does not apply with respect to loss under Coverage D; . . .
>
> ***

33.     Policy Form **FP 7956**, which was in effect for policy periods May 4,

2016 – May 4, 2017 and May 4, 2017 – May 4, 2018  provides in **SECTION II –**

**CONDITIONS**:

> ***
>
> 3. **Duties after Loss**.  In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply.  You shall cooperate with us in seeing that these duties are performed:
>    a.   give written notice to us or our agent as soon as practicable, which sets forth:
>        (1)   the identity of this policy and **insured**;
>        (2)   reasonably available information on the time, place and circumstances of the accident or **occurrence**; and
>        (3)   names and addresses of any claimants and available witnesses;

> b.    immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**
>
> ***
>
> e.    the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses.  This does not apply to expense for first aid to others at the time of the **bodily injury**.

***

34.    Policy Form H6-2123, effective for policy periods May 4, 2018 and

thereafter, provides the following relevant **DEFINITIONS**:

> 2.    "**bodily injury**" means physical injury, sickness, or disease to a person.  This includes required care, loss of services and death resulting therefrom. . . .
>
> ***
>
> 4.    "**business**" means any full-time or part-time activity, trade, profession, employment, or occupation or a commercial, mercantile, or industrial undertaking of an economic nature.  It does not matter whether it is continuous or regular, is a secondary or supplemental source of income, or is an **insured's** principal means of livelihood.  Profit and profit motive are irrelevant. . . .
>
> ***
>
> 10.   "**insured**" means you and, if residents of your household:
>
> > a.    your relatives; and
> > b.    any other person under the age of 21 who is in the care of a person described above.
>
> ***
>
> 14. "**occurrence**", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:
>
> > a.    **bodily injury**; or
> > b.    **property damage;**

during the policy period.  All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence.**

15. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property.  Theft or conversion of property by any **insured** is not **property damage**.

35.    Policy Form H6-2123, effective for policy periods May 4, 2018 and thereafter, provides in **SECTION II – LIABILITY COVERAGES**:

> **COVERAGE L – PERSONAL LIABILITY**
> If a claim is made or suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, **we** will:
>
> 1. Pay up to **our** limit of liability for the damages for which the **insured** is legally liable. **We** will not pay for criminal restitution; and
>
> 2. Provide a defense at **our** expense by counsel of **our** choice.  **We** may make any investigation and settle any claim or suit that we decide is appropriate.  **Our** obligation to defend any claim or suit ends when the amount **we** pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals **our** limit of liability. **We** will not provide a defense to any **insured** for criminal prosecution or proceedings.

36.    Policy Form H6-2123, effective for policy periods May 4, 2018 and thereafter, provides in **SECTION II – EXCLUSIONS**:

> 1. Coverage L and Coverage M do not apply to:
>    a. **bodily injury** or **property damage** that:
>       (1) was a result of a:
>           (a) willful and malicious; or
>           (b) criminal;
>           act or omission of the **insured**;
>       (2) was intended by the **insured**; or
>       (3) would have been expected by the **insured** based on a reasonable person standard.
>                              ***

18

Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

(1)   **bodily injury** or **property damage** was sustained by a different person, entity, or property than was expected or intended;

(2)   **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intendent;
. . .

\*\*\*

b.   **bodily injury** or **property damage** arising out of **business** pursuits of any **insured**, except as provided in item c. below. This exclusion does not apply to activities that are ordinarily incident to non-**business** pursuits;

\*\*\*

2.  Coverage L does not apply to:
a.   liability:

\*\*\*

(2)   imposed on or assumed by any **insured** through any unwritten or written contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement;

37.   Policy Form H6-2123, effective for policy periods May 4, 2018 and thereafter, is subject to certain conditions contained within **SECTION II – CONDITIONS**, including:

\*\*\*

3.  **Duties after Loss**. In case of an accident or **occurrence**, the **insured** must cooperate with **us** in the investigation, settlement, or defense of any claim or suit and also perform the following duties that apply. **You** must cooperate with **us** in seeing that these duties are performed:
a.   . . .
b.   Immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

\*\*\*

38.     The allegations in the Underlying Complaint do not trigger the insuring agreements because none of them constitute "bodily injury" or "property damage" caused by an "occurrence."  State Farm thus owes Daniel M. Homolka, P.A. and Daniel M. Homolka no coverage obligations under the Condo Policy.

39.     Daniel M. Homolka, P.A. is not an insured under the Condo Policy, and thus is not entitled to seek coverage thereunder.

40.     Even if the allegations in the Underlying Complaint had triggered the insuring agreements, coverage would be barred by Exclusions within the policy, as further outlined above.

41.     There is no coverage under the Condo policy for exemplary or punitive damages, as such coverage is generally prohibited by law as a matter of public policy.

42.     Daniel M. Homolka, P.A. and Daniel M. Homolka failed to comply with the Conditions of the policy which required them to provide prompt notice of suit to State Farm.

43.     By letter dated September 17, 2020, State Farm advised Daniel M. Homolka that it would not extend coverage for defense or indemnity to him under the Condo or PLUP policies for the claims asserted against him in the Underlying Lawsuit.

44.     State Farm reserves the right to rely upon and amend this Complaint in Declaratory Judgment, if necessary, to include other or additional policy provisions, exclusions, conditions, or limitations not previously mentioned, that are

or may become applicable to the allegations asserted against Daniel M. Homolka, P.A. and/or Daniel M. Homolka.

<u>**THE PERSONAL LIABILITY UMBRELLA POLICY**</u>

45.     At all relevant times from December 20, 2013 through December 20, 2020, Defendant Daniel M. Homolka was insured under a Personal Liability Umbrella Policy ("PLUP") coverage form FP 7950.2.  A true and correct copy of the PLUP is attached hereto as **Exhibit D**.  Per the insuring agreement, the PLUP only provides coverage pursuant to its provisions, exclusions, conditions, or limitations.

46.     The PLUP defines certain relevant terms as follows in the **DEFINITIONS**:

***

2.   **bodily injury**" means physical injury, sickness or disease to a person, including death resulting therefrom. . . .

3.   "**business**" means a trade, profession or occupation, including farming.

***

6.   "**insured**" means":
    a.   **you** and **your relatives** whose primary residence is **your** household;
    b.   any other human being under the age of 21 whose primary residence is **your** household and who is in the care of a person described in 6.a.;
    c.   any other person or organization to the extent they are liable for the use of an **automobile**, **recreational motor vehicle** or watercraft by a person included in 6.a. or 6.b. . . .

7.   "**loss**" means:
    a.   an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the

21

policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

b.   the commission of an offense which first results in **personal injury** during the policy period.  A series of similar or related offenses is considered to be one **loss**.

8.  "**personal injury**" means injury other than **bodily injury** arising out of one or more of the following offenses:

a.   false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;

b.   abuse of process, malicious prosecution;

c.   libel, slander, defamation of character; or

d.   invasion of a person's right of private occupancy by physically entering into that person's personal residence.

\*\*\*

10. "**property damage**" means physical damage to or destruction of tangible property, including the loss of use of such property.  Tangible property does not include computer programs or data or the reconstruction of computer programs or data.  Theft or conversion of property by an **insured** is not **property damage**.

47.  The PLUP provides the following relevant **COVERAGES**:

**COVERAGE L – PERSONAL LIABILITY**
If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**.  The most **we** will pay for such **loss** is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

**Defense**
If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the **insured** at **our** expense by counsel of **our** choice when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy.  **We** have no duty to defend any claim or suit after **we** tender, deposit in court, or pay the amount due under this policy.

\*\*\*

48.     The PLUP contains a number of relevant **EXCLUSIONS**, including:

There is no coverage under this policy for any:

***

6.  **loss** arising out of any **insured's business property** or **business** pursuits of any **insured**, unless:
    a.      (1)      the **loss** does not involve any land motor vehicle or watercraft; and
            (2)      **required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page;

***

14. **bodily injury** or **property damage** which is:
    a.      either expected or intended by the **insured**; or
    b.      the result of any willful and malicious act of the **insured**;

***

17. **personal injury** when the **insured** acts with specific intent to cause any harm;

***

19. liability imposed on or assumed by any **insured** through any unwritten or written agreement;

***

49.     The PLUP contains certain **DUTIES AFTER LOSS**, including:

In the event of a **loss** for which this policy may provide coverage, all **insureds** seeking coverage must:

***

2.  immediately notify **us** and any other insurer providing insurance of any claim or suit filed against the **insured** and send **us** and such insurer every demand, notice, summons and other process received related to the claim or suit;

***

50.     The allegations in the Underlying Complaint do not trigger the insuring

agreement because none of them constitute damages because of a "loss" as that

23

term is defined by the policy.  State Farm thus owes Daniel M. Homolka, P.A. and Daniel M. Homolka no coverage obligations under the PLUP.

51.    Daniel M. Homolka, P.A. is not an "insured" under the PLUP, and thus is not entitled to seek coverage thereunder.

52.    Even if the allegations in the Underlying Complaint had triggered the insuring agreement, coverage would be barred by Exclusions within the policy, as further outlined above.

53.    There is no coverage under the PLUP for exemplary or punitive damages, as such coverage is generally prohibited by law as a matter of public policy.

54.    Daniel M. Homolka, P.A. and Daniel M. Homolka failed to comply with the Conditions of the policy which required them to provide prompt notice of suit to State Farm.

55.    By letter dated September 17, 2020, State Farm advised Daniel M. Homolka that it would not extend coverage for defense or indemnity to him under the Condo or PLUP policies for the claims asserted against him in the Underlying Lawsuit.

56.    State Farm reserves the right to rely upon and amend this Complaint in Declaratory Judgment, if necessary, to include other or additional policy provisions, exclusions, conditions, or limitations not previously mentioned, that are or may become applicable to the allegations asserted against Daniel M. Homolka, P.A. and/or Daniel M. Homolka.

## <u>COUNT ONE</u>
## <u>DECLARATORY RELIEF</u>

57.     State Farm incorporates by reference the preceding paragraphs as though fully set forth herein.

58.     A controversy of a justiciable nature has arisen between the parties regarding the rights and obligations of the parties under the applicable insurance policies.

59.     State Farm seeks a determination from this Court that State Farm has no duty to defend and no duty to indemnify Daniel M. Homolka, P.A. and Daniel M. Homolka—or any other person or entity—against the allegations asserted by Lowell Lundstrom, Jr. in the Underlying Complaint.

60.     The Business-Office Policy does not afford coverage or protection for Daniel M. Homolka, P.A. and Daniel M. Homolka against the allegations asserted by Defendant Lundstrom in the Underlying Complaint because their conduct does not trigger the insuring agreement and exclusions to coverage are applicable. Consequently, State Farm has no duty to defend and no duty to indemnify Daniel M. Homolka, P.A. and Daniel M. Homolka—or any other person or entity— under the Business-Office Policy against the allegations asserted by Lundstrom in the Underlying Complaint.

61.     The Condo Policy does not afford coverage or protection for Daniel M. Homolka, P.A. and Daniel M. Homolka against the allegations asserted by Defendant Lundstrom in the Underlying Complaint because their conduct does not

trigger the insuring agreement and exclusions to coverage are applicable. Additionally, Daniel M. Homolka, P.A. is not an "insured" under the Condo Policy. Consequently, State Farm has no duty to defend and no duty to indemnify Daniel M. Homolka, P.A. and Daniel M. Homolka—or any other person or entity— under the Condo Policy against the allegations asserted by Lundstrom in the Underlying Complaint.

62.    The PLUP does not afford coverage or protection for Daniel M. Homolka, P.A. and Daniel M. Homolka against the allegations asserted by Defendant Lundstrom in the Underlying Complaint because their conduct does not trigger the insuring agreement and exclusions to coverage are applicable. Additionally, Daniel M. Homolka, P.A. is not an "insured" under the PLUP. Consequently, State Farm has no duty to defend and no duty to indemnify Daniel M. Homolka, P.A. and Daniel M. Homolka—or any other person or entity— under the PLUP against the allegations asserted by Lundstrom in the Underlying Complaint.

**TRIAL BY JURY IS HEREBY DEMANDED.**

**WHEREFORE**, State Farm prays for the following relief:

1.    That this Court determine and declare that State Farm has no duty to defend and no duty to indemnify Daniel M. Homolka, P.A. or Daniel M. Homolka— or any other person or entity—under the Business-Office Policy, Condo Policy, or PLUP against the allegations asserted by Lundstrom in the Underlying Complaint.

2.      That this Court grant State Farm its costs and disbursements incurred herein, as well as such other and further relief as the Court deems just and equitable.

HKM, P.A.

Date: <u>December 22, 2020</u>                      <u>*s/Kathleen K. Curtis*</u>
                                                    C. Todd Koebele # 17287X
                                                    Scott G. Williams #0349410
                                                    Kathleen K. Curtis #0388279
                                                    30 East Seventh Street, Suite 3200
                                                    St. Paul, MN  55101-4919
                                                    Telephone:  (651) 227-9411
                                                    tkoebele@hkmlawgroup.com
                                                    swilliams@hkmlawgroup.com
                                                    kcurtis@hkmlawgroup.com

                                                    *Attorneys for Plaintiff State Farm Fire and Casualty Company*

4836-2372-0396, v. 1